[Cite as *State v. Alexander*, 2011-Ohio-4015.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                              :

    Plaintiff-Appellee                        :            C.A. CASE NO. 24119

v.                                                                 :            T.C. NO.    10CR160

LANCE T. ALEXANDER                          :              (Criminal appeal from
                                                                                   Common Pleas Court)

    Defendant-Appellant                   :

                                                                  :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____12th____ day of _____August_____, 2011.

· · · · · · · · · ·

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KENT J. DEPOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOFRIO, J. (by assignment)

{¶ 1}  Defendant-appellant, Lance Alexander, appeals from a Montgomery County Common Pleas Court judgment convicting him of failure to notify following a jury trial.

{¶ 2}  Appellant was convicted of rape in 2004 and sentenced to a

three-year prison term. At the time, the trial court also classified appellant as a sexually oriented offender under Megan's Law. Pursuant to this classification, appellant was required to register his address with the county sheriff and verify it annually for a ten-year period. Appellant was also required to notify the sheriff of a change in address prior to moving.

{¶ 3} In 2008, Ohio passed the Adam Walsh Act (AWA), which repealed Megan's Law. Appellant was subsequently reclassified by the attorney general under the AWA as a Tier III sexual offender. As a Tier III offender, appellant was required to verify his address every 90 days for life. Appellant was also required to notify the sheriff of a change in address prior to moving.

{¶ 4} On January 4, 2010, appellant registered his address with the sheriff indicating that he lived at 609 Chandler Drive in Trotwood, Ohio. An investigation ensued thereafter. Deputy Kevin Kerschner went to the Chandler Drive address to investigate. He did not find appellant there. He then went to 3538 Spanish Villa, where appellant answered the door. According to Detective Kerschner, appellant gave the Spanish Villa address as his current address. Detective Christopher Plummer interviewed appellant where appellant admitted that the Spanish Villa address was his current residence. Sometime later, possibly in April 2010, appellant registered the Chandler Drive address with Detective Kerschner who verified the information.

{¶ 5} On January 21, 2010, a Montgomery County Grand Jury indicted appellant on one count of failure to notify, a first-degree felony in violation of R.C. 2950.05(A)(F)(1). The matter proceeded to a jury trial where the jury returned a

guilty verdict. The trial court subsequently sentenced appellant to three years in prison.

**{¶ 6}** Appellant filed a timely notice of appeal on June 28, 2010.

**{¶ 7}** Appellant raises three assignments of error, the first of which states:

**{¶ 8}** "APPELLANT'S CONVICTION MUST BE VACATED BECAUSE THE LAW ON WHICH IT IS BASED, OHIO'S ADAM WALSH ACT, IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT BECAUSE IT VIOLATES THE SEPARATION OF POWERS DOCTRINE."

**{¶ 9}** Appellant argues here that he could not be convicted of failure to notify because his conviction was based on his reclassification under the AWA, which he asserts is unconstitutional for violating the separation of powers doctrine. He points out that he was originally classified under Megan's Law, and asserts that his reclassification was unlawful and could not serve as the basis for his conviction. He relies on the Ohio Supreme Court's decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424.

**{¶ 10}** In 2004, appellant was convicted of rape and sentenced to three years in prison. He was also classified as a sexually oriented offender under Megan's Law. To comply with Megan's Law, appellant was required to verify his address annually for a period of ten years. Former R.C. 2950.06(B)(2). Failure to comply with this reporting requirement was a third-degree felony when the underlying sexually oriented offense was a first-degree felony. Former R.C. 2950.99(A)(1)(a)(i).

**{¶ 11}** As of January 1, 2008, the General Assembly repealed Megan's Law

and replaced it with the AWA. Pursuant to the AWA, appellant was reclassified as a Tier III offender. As a Tier III sex offender, appellant was now required to verify his address every 90 days for life. Failure to comply with this reporting requirement correlates with the degree of the sexually oriented offense that is the basis for the registration. R.C. 2950.99(A)(1)(a)(ii). Thus, in this case because the sexually oriented offense that is the basis for appellant's registration is a first-degree felony, his failure to comply with the reporting requirement would likewise be a first-degree felony.

{¶ 12} Under both Megan's Law and the Adam Walsh Act, appellant was required to notify the sheriff of a change in address prior to moving.

{¶ 13} On June 3, 2010, in the middle of appellant's trial, the Ohio Supreme Court issued *Bodyke*, 126 Ohio St.3d 266. *Bodyke* held that the AWA's reclassification provisions, R.C. 2950.031 and 2950.032, were unconstitutional and severed them from the AWA. Id. at paragraphs two and three of the syllabus. *Bodyke* went on to instruct what this meant for offenders who had originally been classified under Megan's Law and were then reclassified under the AWA:

{¶ 14} "R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated." Id. at ¶66.

{¶ 15} The Ohio Supreme Court recently elaborated on what is to happen to these offenders in *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481. Gingell was convicted of rape in 1981 and was classified as a sexually oriented offender

under Megan's Law in 2003. To comply with Megan's Law, Gingell was required to report once a year for ten years. A failure to register under this requirement was a fifth-degree felony. Once the AWA was enacted, Gingell was reclassified as a Tier III offender. Under the AWA, Gingell was required to report every 90 days for the rest of his life. Because the failure to register was now the same degree as the underlying offense, in Gingell's case failure to register was a first-degree felony.

{¶ 16} Gingell was indicted on and pleaded guilty to a charge of failure to verify his address. The trial court sentenced him to eight years in prison.

{¶ 17} Gingell appealed arguing that the court had erred in retroactively applying R.C. 2950.99, which made his violation of R.C. 2950.06 a first-degree felony. He further contended that if the court had applied the version of R.C. 2950.99 in place at the time of his original classification, it would have made his failure to verify his address a fifth-degree felony. The court of appeals held there was no retroactive application because Gingell's failure to verify occurred after the enactment of AWA.

{¶ 18} In the meantime, the Ohio Supreme Court decided *Bodyke*. Then, in reversing Gingell's conviction, the Court stated:

{¶ 19} "[P]ursuant to *Bodyke*, Gingell's original classification under Megan's Law and the associated community-notification and registration order were reinstated. Therefore, the current version of R.C. 2950.06, which requires Tier III sexual offenders to register every 90 days, does not apply to Gingell. Since Gingell was charged after his reclassification and before *Bodyke*, there is no doubt that he was indicted for a first-degree felony for a violation of the reporting requirements

under the AWA. Since the application of the AWA was based upon an unlawful reclassification, we reverse the judgment of the court of appeals and vacate Gingell's conviction for a violation of the 90-day address-verification requirement of R.C. 2509.06. Gingell remained accountable for the yearly reporting requirement under Megan's Law; whether he met that requirement is not a part of this case." Id. at ¶8.

{¶ 20} In the present case, the issue of waiver should initially be addressed. Appellant's trial began on June 2, 2010, and all of the evidence was presented that day. The Ohio Supreme Court decided *Bodyke* on June 3. The trial continued on June 4, with closing arguments and jury instructions. After these were completed, counsel and the court had the following conversation:

{¶ 21} "MR. TREHERNE (appellant's counsel): The only other thing I would state for the record is evidently there was some sort of case that came down either yesterday or today and perhaps this charge is constitutionally or is infringing on my client's constitutional rights. And if this ever goes up on appeal, they may hear this during the record.

{¶ 22} "THE COURT: Yeah. And, well, just it is June 4 and I believe yesterday, June 3, the Ohio Supreme Court issued a ruling on Ohio's enactment of the Adam Walsh Act. And the Ohio Supreme Court held that portions of Ohio's enactment of the Adam Walsh Act were unconstitutional based upon separation of powers arguments.

{¶ 23} "The Court's not had an opportunity to review that decision. We don't know whether it applies to Mr. Alexander's case or not. And certainly if it would,

then the Court would anticipate that those arguments be raised via post trial motions or raised in the Second District Court of Appeals on his case.

{¶ 24} "So, we do recognize that there's been a change of law literally overnight that may be applicable to  - -

{¶ 25} "MS. CARTER (prosecutor):   During the trial?

{¶ 26} "THE COURT:   During the trial that may be applicable to this case and we simply don't know.   And the rules will be as they will with regard to that circumstance."   (Tr. 287-88).

{¶ 27} Given the timing of the *Bodyke* decision and the fact that appellant brought it up in the trial court when no one was yet certain if it applied, he has not waived this issue on appeal.

{¶ 28} Thus, we will go on to determine what effect, *Bodyke* has on appellant's conviction.   This identical issue was very recently decided by this court in *State v. Johnson*, Montgomery App. No. 24029, 2011-Ohio-2069.

{¶ 29} In that case, Johnson pleaded no contest to a violation of R.C. 2950.05(A)(F)(1), for failing to provide notice of his change of residence address to the sheriff at least 20 days prior to the change.   Johnson appealed arguing that he could not be criminally liable for the offense because his status as a Tier III offender was the product of an unconstitutional reclassification from his prior classification as a sexual offender.

{¶ 30} On appeal, the state conceded that Johnson's reclassification was unconstitutional per *Bodyke*.   But it argued that because the notification requirement Johnson violated was imposed by R.C. 2950.05(A) in both its former

and current versions, Johnson was still criminally liable for the conduct of which he was convicted.

{¶ 31} This court quoted the former and current versions of R.C. 2950.05(A) as follows:

{¶ 32} "Former R.C. 2950.05(A) required persons classified as sexual offenders to notify the sheriff 'at least twenty days prior to changing the offender's ... residence address.' Former R.C. 2950.05(F)(1) provided: 'No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section shall fail to notify the appropriate sheriff in accordance with that division.' A violation of former R.C. 2950.05 was a felony of the third degree. R.C. 2950.99(A)(1)(a)(i).

{¶ 33} "* * * In its current form, R.C. 2950 .05(A) provides that persons classified as Tier III sexual offenders 'shall provide notice of any change of residence ... to the sheriff', and that 'the offender shall provided [sic.] the written notice at least twenty days prior to changing the address of the residence.' R.C. 2950.05(F)(1) provides: 'No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section ... shall fail to notify the appropriate sheriff in accordance with that division.' A violation of R.C. 2950.05 is a felony of the first degree. R.C. 2950.99(A)(1)(a)(i)."   Id. at ¶¶7-8.

{¶ 34} This court then went on to find:

{¶ 35} "In *State v. Milby*, Montgomery App. No. 23798, 2010–Ohio–6344, on the same facts, we held that because the prohibited conduct in failing to give the required prior notification did not change when R.C. 2950.05 was amended, the

defendant had an ongoing duty that neither the amendment of that section nor the holding in *Bodyke* had changed. Therefore, the defendant could be found criminally liable for his conduct in failing to notify, based on the prior sexual offender classification to which the defendant was reinstated per *Bodyke*. However, because the related amendment of R.C. 2950.99(A)(1)(a)(i) changed the violation from a third degree felony to a first degree felony, of which the defendant had been convicted, we reversed the defendant's conviction and remanded the case for resentencing.

{¶ 36} "We find, on the authority of *Milby*, that the trial court did not err when it found Defendant Johnson guilty of a violation of R.C. 2950.05(F)(1) for his failure to notify the sheriff at least twenty days prior to Defendant's change of his residence address. However, per *Milby*, we find that the trial court erred when it convicted Defendant of a first degree felony and sentenced him accordingly, instead of finding Defendant guilty of a third degree felony." Id. at ¶¶9-10.

{¶ 37} It is clear from a reading of *Bodyke*, *Gingell*, and *Johnson* that appellant's reclassification under the AWA was unconstitutional.

{¶ 38} Appellant had a duty under both the former and current versions of R.C. 2950.05(A) to notify the sheriff prior to moving. Under either version of the statute, as will be seen below, appellant failed to meet this requirement. The difference, however, is that under the former version appellant would have been guilty of a third-degree felony instead of a first-degree felony under the current version. Thus, like in *Johnson*, appellant should have been found guilty of a third-degree felony and not a first-degree felony. On this basis, appellant's first

assignment of error has merit.

{¶ 39} Appellant's second and third assignments of error share a common factual basis. Therefore, we will address them together.  They state:

{¶ 40} "APPELLANT'S CONVICTION IS AGAINST THE SUFFICIENCY OF THE EVIDENCE."

{¶ 41} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 42} In these assignments of error, appellant argues that his conviction is against both the sufficiency and the weight of the evidence.

{¶ 43} As to sufficiency, appellant argues that under the AWA he would have been required to register his change of address at least 20 days prior to moving. But under Megan's Law, he would have been required to notify the sheriff of his change in address at least seven days prior to moving.  Appellant argues, that pursuant to *Bodyke*, his old registration requirements were reinstated.  Appellant goes on to point out that the state argued that appellant failed to provide a change of address between January 4, and January 13, 2010.  He seems to contend that under his reinstated notification requirements, the state did not prove that he failed to register at least seven days before moving.

{¶ 44} Additionally, appellant points to Detective Plummer's testimony that he was investigating a possible failure to notify that occurred between June and December 2009, not in January 2010.

{¶ 45} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as

a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶ 46} The jury convicted appellant of failure to notify in violation of R.C. 2950.05(A), which as discussed above, required appellant in both its former and current versions to notify the sheriff 20 days *before* changing residences.

{¶ 47} The evidence at trial was as follows.

{¶ 48} Sergeant Julie Stephens is in charge of sexual offenders at the Montgomery County Sheriff's Office. As such, she keeps the records that document sex offender registration. (Tr. 104). Sgt. Stephens testified that a document regarding appellant's unemployment compensation was kept in his file. (Tr. 114; Ex. 8). However, she was unsure of who placed it in the file. (Tr. 124). On this document, appellant's address was listed as 3538 Spanish Villa on August 26, 2009. (Ex. 8).

{¶ 49} James Hamilton is the owner of the condominium located at 3538 Spanish Villa. He testified regarding a lease for that property. Hamilton identified a copy of the lease that was signed by appellant and his wife, McKeesha, on June 25, 2009. (Tr. 136; Ex. 3). The lease term was to run from July 2009 until July 2010. (Tr. 144-45). Hamilton stated that when he looked into appellant's and

McKeesha's background, he recalled that they had been staying at 609 Chandler, which was McKeesha's parents' house. (Tr. 139-40). Once the lease term began, Hamilton stated that appellant and McKeesha always paid their rent in cash. (Tr. 146).

{¶ 50} On cross examination, Hamilton admitted that he had been facing financial problems and needed to lease the Spanish Villa condo. (Tr. 142-43). He further stated that per his agreement with the bank, he had to have someone occupy the premises. (Tr. 146). And he stated that appellant and McKeesha agreed to do some painting at the property. (Tr. 146-47). Additionally, Hamilton stated that the utilities always remained in his name. (Tr. 146).

{¶ 51} Detective Isaiah Kellar testified regarding appellant's duty to register forms. He stated that appellant registered his current address on January 4, 2010. (Tr. 160). Pursuant to that registration form, appellant listed his current residence as 609 Chandler Drive. (Tr. 160).

{¶ 52} Deputy Kevin Kerschner testified that he was asked to verify appellant's address. (Tr. 171). In an attempt to do so, Deputy Kerschner went to 609 Chandler Drive on January 6, 2010. (Tr. 173). He knocked on the door at 11:55 p.m. (Tr. 173, 175). Deputy Kerschner stated that a female answered the door. (Tr. 175). He stated that he did not find appellant at the Chandler Drive address so he next went to 3538 Spanish Villa. (Tr. 179). By this time, it was after midnight on January 7. (Tr. 179). Deputy Kerschner knocked on the door at Spanish Villa and appellant answered the door. (Tr. 179). Deputy Kerschner asked appellant what his current address was and appellant gave the Spanish Villa

address. (Tr. 179-80). Deputy Kerschner also testified that sometime later in 2010, possibly in April, he verified appellant's address at 609 Chandler. (Tr. 185-86).

{¶ 53} Finally, Detective Christopher Plummer testified he was assigned to investigate a possible failure to notify by appellant. He stated that it was in the timeframe of June 2009 to December 2010. (Tr. 188-89). Detective Plummer went to 609 Chandler on January 12, 2010, as part of his investigation. (Tr. 195-96). He did not find appellant there. (Tr. 196). He stated that a male and a female were present there. (Tr. 196). Detective Plummer next went to 3538 Spanish Villa, but no one was home. (Tr. 196). Detective Plummer next interviewed appellant on January 13, 2010. (Tr. 198). During the interview, appellant told Detective Plummer that he was currently residing at 3538 Spanish Villa. (Tr. 202). Appellant then told Detective Plummer that he had been living there for two to three weeks and he was hoping that the community there would accept him. (Tr. 203). However, when Detective Plummer pressed the issue, appellant told him that he had been living there since June 2009. (Tr. 203-204). Detective Plummer testified that appellant told him that he failed to notify the sheriff of his Spanish Villa address because he was afraid he would be evicted once the neighbors learned of his status. (Tr. 204-205). Finally, Detective Plummer stated that appellant told him that he and his wife had only stayed at the Chandler address for a few nights because his wife did not get along with her mother's boyfriend. (Tr. 205).

{¶ 54} The evidence is sufficient to support appellant's conviction. Whether

appellant had to notify the sheriff at least seven days or at least 20 days or even at least one day prior to moving is irrelevant. Under any prior notification requirement, appellant failed. On January 4, 2010, appellant registered his address as 609 Chandler Drive. But pursuant to appellant's admission to Detective Plummer, he had been living at the Spanish Villa address for at least two weeks and probably for seven months. And when Deputy Kerschner found appellant at the Spanish Villa address on January 7, 2010, appellant told him that was his current address. Thus, appellant clearly moved to Spanish Villa at some point and failed to notify the sheriff prior to doing so. This evidence supports the elements of failure to notify.

{¶ 55} Furthermore, while Detective Plummer did state that he was investigating a possible failure to notify between June 2009 and December 2010, this does not have any bearing on the evidence discussed above that concerned January 2010, where appellant was living at that time, and the fact that he failed to notify the sheriff prior to his move.

{¶ 56} Accordingly, appellant's second assignment of error is without merit.

{¶ 57} As to manifest weight, appellant argues that even if his reclassification was constitutional, his conviction should be reversed based on the weight of the evidence.

{¶ 58} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

{¶ 59} Appellant first contends that the state relied on a document in his unemployment compensation file from Job and Family Services listing his address as the Spanish Villa residence. However, he argues, none of the witnesses know how the document appeared in his file, who put it there, or when it was placed there.

{¶ 60} While a document was presented reflecting appellant's address as Spanish Villa from his unemployment compensation file, this was not the only evidence the state presented as to appellant's address. As noted above, both Detective Plummer and Deputy Kerschner testified that appellant admitted to living at the Spanish Villa address. Thus, the unemployment compensation document was merely cumulative to this testimony. Furthermore, Sgt. Stephens, who is the record keeper for sex offender registrations testified that the document was kept in appellant's file.

{¶ 61} Appellant next points out that Detective Plummer testified that while appellant admitted to living at the Spanish Villa address for a few weeks, he also testified that appellant admitted to living at the Chandler address. While this is

true, Detective Plummer also stated that appellant testified that he only stayed at the Chandler Drive address for a few nights.

{¶ 62} Finally, appellant asserts that Hamilton testified that appellant and his wife were fixing up the Spanish Villa residence while they were living on Chandler Drive with her parents and that all utilities remained in Hamilton's name.

{¶ 63} This is only partially true. Hamilton did testify that appellant and his wife had been living with her parents on Chandler Drive in June 2009. And he testified that all utilities remained in his name. However, Hamilton also stated that appellant and McKeesha signed a lease that ran from July 2009 to July 2010. And as to improvements, he simply testified that appellant agreed to do some painting. Hamilton never stated that appellant and McKeesha were living with her parents while they were fixing up the Spanish Villa condo.

{¶ 64} In sum, the evidence supports the jury's verdict. Appellant's January 4, 2010 registration reflected that he was living at 609 Chandler Drive. Yet several witnesses testified that appellant admitted to living at 3538 Spanish Villa in the following days. There was no evidence that appellant ever notified the sheriff that he moved to Spanish Villa. Thus, we cannot conclude that the jury clearly lost its way in finding appellant guilty.

{¶ 65} Accordingly, appellant's third assignment of error is without merit.

{¶ 66} For the reasons stated above, appellant's sentence is hereby reversed and this matter is remanded for resentencing as a third degree felony pursuant to law and consistent with this opinion.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio)

Copies mailed to:

Johnna M. Shia
Kent J. Depoorter
Hon. Mary L. Wiseman