[Cite as *State v. Bell*, 2016-Ohio-7363.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                          :

    Plaintiff-Appellee,                         :               CASE NO.   CA2015-10-077

                                                           :               O P I N I O N
- vs -                                                                        10/17/2016

                                                           :

JAYSEN W. BELL,                                    :

    Defendant-Appellant.                   :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2006-CR-00867


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Rion Rion Rion L.P.A., Inc., Jon Paul Rion, Nicole L. Rutter-Hirth, 130 West Second Street, Suite 2150, P.O. Box 10126, Dayton, Ohio 45402, for defendant-appellant


**PIPER, J.**

{¶ 1}   Defendant-appellant, Jaysen Bell, appeals his sexual predator classification by the Clermont County Court of Common Pleas.

{¶ 2}   Bell, who was a foster parent to two teenage boys, was convicted of sexual battery and sexual imposition after he molested the teens.  Upon sentencing, which occurred on April 8, 2008, the trial court sentenced Bell to five years in prison and also designated Bell a Tier III sexual offender pursuant to the Adam Walsh Act, also known as Senate Bill 10.  SB

10 was enacted in July 2007, and had an effective date of January 1, 2008. Given Bell's April 2008 sentencing, the trial court followed the sexual classification requirements set forth in SB 10 rather than applying the prior version of Ohio's sexual-offender statute, Megan's Law, which was in effect at the time of Bell's crimes against his foster children. As such, the trial court applied SB 10 retroactively to Bell because his crimes occurred before the bill became effective.

{¶ 3} In 2010, the Ohio Supreme Court determined that portions of SB 10 were unconstitutional as a violation of the separation of powers doctrine. The following year, the Ohio Supreme Court determined that SB 10, as applied to any sex offender who committed an offense prior to the enactment of SB 10, violates one's constitutional protection against the application of retroactive laws.

{¶ 4} Prior to Bell's release from prison, he was automatically reclassified a sexually-oriented offender pursuant to Megan's Law, but did not receive a hearing before his reclassification. According to a transcript of a hearing that occurred, the state indicated that Bell was "summarily replaced from a Tier III sex offender and reclassified as a sexually-oriented offender. Now, that was not done by this trial court at all. That was done when he was released from prison * * *." In a subsequent hearing, the state told the court, "the Attorney General's Office essentially reclassified the Defendant as a sexually-oriented offender." As such, and after Bell's release from prison, he registered as a sexually-oriented offender.

{¶ 5} Approximately a year after Bell's release from prison, the state moved to reclassify Bell a sexual predator, asserting that Bell's prior classification pursuant to SB 10 was an improper retroactive application. Bell opposed reclassification, and argued that the trial court lacked jurisdiction to reclassify him once he was released from prison. The trial court allowed the parties to brief and argue the issue, after which, the trial court determined

- 2 -

that it held proper jurisdiction to reclassify Bell.

{¶ 6} As required by Megan's Law, the trial court then held a hearing, at which the state offered exhibits from the original investigation and trial. The court also considered a risk assessment analysis conducted at the court's request. The report suggested that Bell was a low-risk offender. However, and after considering all of the evidence, the trial court found Bell likely to re-offend in the future, and designated him a sexual predator. Bell now appeals the trial court's classification, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN CONCLUDING IT HAD JURISDICTION TO RECLASSIFY BELL MORE THAN A YEAR AFTER HE WAS RELEASED FROM PRISON.

{¶ 9} Bell argues in his first assignment of error that the trial court erred by finding that it had jurisdiction to reclassify him once he was released from prison.

{¶ 10} The record indicates that Bell was first sentenced according to SB 10, and that the application of SB 10 in that instance was retroactive because his crimes predated the enactment of the legislation. Once the Ohio Supreme Court determined that retroactive application of SB 10 was unconstitutional, Bell's initial classification was invalid. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374.

{¶ 11} Once Bell's classification became invalid due to the original application of SB 10, Bell was entitled to be reclassified pursuant to the law in effect at the time of his offenses. Bell perpetrated his crimes upon his foster children between December 2003 and June 2006, and the law in effect at the time was Megan's Law. As of 2003, Megan's Law required a trial court to hold a hearing in order to determine whether a defendant convicted of a sexually-oriented offense, not otherwise registration-exempt, is a sexual predator. R.C. 2950.09(B)(1)(a). During the years in which Bell committed sexual battery and sexual imposition against his foster children, those crimes were sexually-oriented offenses according

to R.C. 2950.01(D), and such crimes were not considered registration-exempt according to R.C. 2950.01(P) and (Q). Therefore, given these statutory requirements, the trial court was required to hold a hearing before determining whether or not Bell should be classified a sexual predator.

{¶ 12} While Bell now argues that the trial court lost jurisdiction the moment he completed his prison sentence, we disagree. Normally, a trial court does not have jurisdiction to correct a void sentence once the prison term is complete on the related offense. *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014. However, and unlike correcting a sentence already served, addressing classification and registration requirements according to Megan's Law is different because such requirements are "collateral consequence[s] of the offender's criminal acts rather than a form of punishment per se." *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 34. As such, and unlike SB 10, the Ohio Supreme Court noted several times that the registration and classification requirements pursuant to Megan's Law were remedial and civil in nature. *Williams*, 2011-Ohio-3374; *Ferguson*, 2008-Ohio-4824; and *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636.

{¶ 13} The classification requirements inherent in Megan's Law were determined by the Ohio Supreme Court to be civil and remedial, and thus are not a punishment within the defendant's sentence. Therefore, the disposition of Bell's challenge to the trial court's jurisdiction to reclassify him must be determined upon rules specific to classification pursuant to Megan's Law, rather than rules that pertain to sentencing or punishment. As such, and because the trial court never classified Bell according to Megan's Law and its civil and remedial classification requirements, the trial court had jurisdiction to hold the hearing despite Bell's release from prison.

{¶ 14} Again, we note that the civil and remedial nature of Bell's classification is inherently different than trying to correct a void prison sentence once that sentence is already

served. For this reason, many courts have addressed reclassification issues once the defendant has been released from prison without voiding the reclassification based on the fact that the prison sentence has been served. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424 (reversing reclassification of appellant who was reclassified eight years after his no contest plea and almost five years after being released from prison because SB 10 was retroactive, not because appellant had been released from prison); *State v. Ogden*, 10th Dist. Franklin No. 09AP-640, 2011-Ohio-1589, ¶ 13 (reversing and reinstating prior judicial classification after released defendant was reclassified, but only because reclassification had been held unconstitutional, not because the defendant had been released from prison); and *State v. Ortega-Martinez*, 8th Dist. Cuyahoga No. 95656, 2011-Ohio-2540 (reversing SB 10's retroactive application to an appellant [who committed his sexual crimes in another state but was reclassified after release from prison and upon moving to Ohio] on retroactivity grounds rather than because appellant had been released from prison). In each of these instances, the appellate court reversed the retroactive application of SB 10 and instead, reinstated the appellants' prior *judicial* classification.

{¶ 15} However, in the case sub judice, Bell had never been judicially classified according to Megan's Law. As previously indicated, the state suggested to the trial court that Bell was "essentially reclassified" by the Ohio Attorney General's Office once Bell was to be released from prison. The record is clear that Bell was not judicially classified according to Megan's Law, and instead indicates that the Ohio Attorney General's Office was responsible for classifying Bell pursuant to Megan's Law as a sexually-oriented offender. This classification was not valid given the supreme court precedent that those who committed their crimes before the enactment of SB 10 were subject to *judicial* classification. *Williams*, 2011-Ohio-3374.

{¶ 16} The record is clear that this court did not order Bell's reclassification, and the

law is equally clear that "the power to review and affirm, modify, or reverse other courts' judgments is strictly limited to appellate courts." *Bodyke*, 2010-Ohio-2424 at ¶ 58, citing Ohio Constitution, Article IV, Section 3(B)(2). Bell's attempted reclassification by the attorney general's office was not valid, as this court never reversed the trial court's application of SB 10, and the trial court never classified Bell pursuant to Megan's Law. Nor did the trial court hold a hearing or address any factors to determine the proper classification of Bell.

{¶ 17} Therefore, and pursuant to the statutory scheme in effect at the time Bell committed his offenses, he was entitled to a hearing at which a court would consider various statutory factors in making its determination according to former R.C. 2950.09(B)(3) as to whether Bell was a sexual predator. We find no statutory authority that divested the trial court's jurisdiction to hold this required hearing, and the fact that Bell had been released from prison does not change the analysis.[1]

{¶ 18} This court is aware that former R.C. 2905.09(B)(1) directed a court to hold the hearing prior to or at the time of sentencing. However, we do not find this language jurisdictional. In fact, the Ohio Supreme Court specifically held that in regard to the timing element of sexual predator designation hearings, "the statutory requirement regarding the timing of the sexual predator hearing is not jurisdictional and a defendant may waive it." *State v. Bellman*, 86 Ohio St.3d 208, 209 (1999). The *Bellman* Court reasoned, "as a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." *Id.* at 210. The court even compared the

---

1. Bell relies on *State v. Brewer*, 86 Ohio St.3d 160, 164 (1999), for the proposition that his hearing must have occurred before his release from prison. However, *Brewer* is inapplicable because the statute discussed in that case clearly provided that classification was dependent upon an adjudication of the defendant as a sexual predator, if "*prior to the offender's release from imprisonment,* the court determines pursuant to division (C) of section 2950.09 of the Revised Code that the offender is a sexual predator." (Emphasis sic.) However, the statute was later amended to remove the language requiring classification "prior to release from imprisonment."

temporal aspect of the sexual predator designation hearing to Ohio's speedy trial right statute where timing is jurisdictional because "it is only where a statutory time requirement evinces an object or purpose to limit a court's authority that the requirement will be considered jurisdictional." *Id.*

{¶ 19} There is no indication in the statute regarding sexual predator designation hearings that the legislature intended to limit the court's authority, and rather, the purpose of holding the hearing before or during sentencing was to ensure procedural efficiency. As such, nothing in the statute divested the trial court of its jurisdiction simply because the required hearing did not occur prior to or at sentencing.

{¶ 20} Instead, this court has previously determined that a trial court holding a sexual predator hearing almost six years after sentencing was valid despite the appellant never waiving his right to the predator hearing. *State v. Wyant*, 12th Dist. Madison No. CA2003-08-029, 2004-Ohio-6663. We stand by the reasoning set forth in *Wyant* that the time frame set forth in the statute that requires a hearing before or at sentencing is merely directory and does not otherwise divest a trial court of jurisdiction, with or without the defendant's waiver of the hearing. *See also State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202 (reinstating trial court's finding that appellant was a sexually-oriented offender where trial court held a hearing three years after appellant was released from prison); and *In re Von*, 146 Ohio St.3d 448, 2016-Ohio-3020 (remanding the determination of appellant's sex-offender classification pursuant to Megan's Law to the trial court even though appellant had been released from prison).

{¶ 21} Once Bell was classified according to SB 10, that classification was invalid given that his crimes predated the enactment of that statute. As such, the trial court had a duty to judicially determine what Bell's classification should be, and was required to hold a hearing before determining that Bell was a sexual predator. Bell's subsequent release from

- 7 -

prison did not divest the trial court's jurisdiction, and we find the trial court's decision to hold the hearing valid.[2] Bell's first assignment of error is therefore, overruled.

**{¶ 22}** Assignment of Error No. 2:

**{¶ 23}** THE TRIAL COURT ERRED IN CONCLUDING BELL WAS LIKELY TO REOFFEND, DESIGNATING HIM AS A SEXUAL PREDATOR.

**{¶ 24}** Bell argues in his second assignment of error that the trial court erred in determining that he is a sexual predator.

**{¶ 25}** According to the version of Megan's Law in effect at the time of Bell's crimes, a sexual predator is a person who has been convicted of, or has plead guilty to, committing a sexually-oriented offense and is likely to engage in the future in one or more sexually-oriented offenses. Former R.C. 2950.01(E); *State v. Eppinge*r, 91 Ohio St.3d 158, 163 (2001). In determining whether an offender should be classified as a sexual predator, the trial court is required to consider all relevant factors, including, but not limited to, the offender's age, his prior criminal record, the victim's age, whether multiple victims were involved, whether drugs and alcohol were used to impair the victim, whether the offender has a mental illness or mental disability, the nature of the offender's sexual contact with the victim and whether it was part of a pattern of abuse, whether the offender displayed cruelty or made threats of cruelty, and any additional behavioral characteristics that contribute to the offender's conduct. Former R.C. 2950.09(B); *State v. Black*, 12th Dist. Butler No. CA2002-04-082, 2003-Ohio-2115, ¶ 11.

**{¶ 26}** The trial court "has discretion to determine what weight, if any, it will assign to each factor." *State v. McGlosson*, 12th Dist. Butler No. CA2013-05-082, 2014-Ohio-1321, ¶

---

2. Bell also argues that his classification is a violation of double jeopardy, res judicata, and laches. However, given the unquestioned remedial nature of Megan's Law, and that Bell was entitled to have his classification based upon Megan's Law rather than SB 10, we find the principles of double jeopardy, res judicata, and laches inapplicable.

29. The trial court is not required to find that the evidence presented supports a majority of the factors listed in former R.C. 2950.09(B), and may rely upon one factor more than another, depending upon the circumstances of the case. *Id.*

{¶ 27} The state must prove that an offender is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(4). Clear and convincing evidence is the measure or degree of proof that is more than a mere preponderance of the evidence, but less than the certainty required for beyond a reasonable doubt in criminal cases. *State v. Wyant*, 12th Dist. Madison No. CA2003-08-029, 2004-Ohio-6663, ¶ 42. Clear and convincing evidence will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Id.*

{¶ 28} After reviewing the record, we find that the trial court's classification of Bell as a sexual predator is supported by clear and convincing evidence. The trial court considered information set forth in Bell's presentence investigation report, as well as information contained in the transcript of the jury trial. Based on the information presented, the trial court addressed each of the pertinent factors as set forth in former R.C. 2950.09(B).

{¶ 29} The court considered that at the time of his crimes, Bell was between 28-30 years old, and had no prior criminal history. Bell's victims were both minors under the age of 16, and were similarly aged when Bell abused them. There was no evidence that Bell used alcohol or drugs to impair either victim, and there was no evidence that Bell suffered from any mental illness or disability at the time of his offenses.

{¶ 30} The trial court also considered that the testimony adduced at trial indicated that Bell's conduct was a part of a demonstrated pattern of abuse upon multiple victims.[3] Both victims testified that Bell repeatedly sexually abused them when they were foster children

---

3. According to Bell's presentence investigation report, he continually sought employment around adolescents, including two different school bus driver positions, as well as youth director at a Methodist church.

placed in his care. The first victim testified that Bell's abuse occurred almost every other day, and sometimes twice a day. The child also testified that the abuse continued to occur for months. The other victim testified to suffering similar abuse as inflicted upon the first child, and that Bell abused him four to five times a week during the time periods that he lived with Bell as a foster child.

{¶ 31} The trial court considered that the method of abuse was similar for each child, including that the abuse started for each child approximately one month after entering Bell's home as foster children. Bell would massage the victims first in the chest area, and then eventually move his massage down to the children's genitals. Bell ultimately masturbated the children or performed fellatio upon them.

{¶ 32} Both children entered Bell's care as his foster children and were, as such, at-risk given their placement in the foster care system. Bell's position as a foster parent allowed him to abuse each vulnerable child on a regular basis, and the trial court specifically determined that Bell's conduct in abusing the children when they were placed in his care as foster children were "acts of cruelty towards each child." The trial court found, and we agree, that inherent in a foster parent's role is the need to provide a "safe haven" for children who have been removed from their biological families for whatever reason. The trial court also found that Bell's conduct toward his foster children demonstrated a "complete indifference" to each victim's suffering of being removed from family, and that Bell's conduct was based upon his own sexual gratification or delight.

{¶ 33} Despite this evidence, Bell submitted a report that he was a low-risk offender. The trial court, however, deemphasized the report findings given various factors, and we find that the trial court did not err in doing so. *See Wyant*, 2004-Ohio-6663 at ¶ 49 ("a trial court is also not required to accept the conclusions of a psychiatric evaluation").

{¶ 34} For example, the person who prepared the report "assumed" that Bell had

committed "at least one sex offense in his past," while Bell had been specifically convicted of four sex crimes involving two separate child victims. The trial court found the tone of the report unfitting to the crimes actually committed, and determined that the writer "seemed to minimize unfavorable facts of Bell's conduct and personality in an effort to downplay them."

{¶ 35} The trial court also noted the contradictory nature of some report findings. At one point, the report indicates that Bell could be considered to be in remission, "since there is no evidence that Bell is currently engaging in sexual conduct with pubescent children, unless it can be shown he is currently experiencing sexual fantasies of engaging in sex with pubescent children * * *." However, the report also indicates that Bell might be in denial over meeting the criteria for a diagnosis of pedophilia/hebephilia, or that he may have learned to mask his symptoms and remain detached from his feelings.

{¶ 36} The trial court also addressed an assumption made in the report that Bell massaging the children might not have had a sexual implication. While the report recognized that giving massages to children is a common method of grooming by which the perpetrator gains the trust of the child, the writer also provided for the possibility that Bell did not massage the children as a method of grooming. However, the trial court disagreed, and found that "Bell's demonstrated pattern of sexual abuse of each child clearly and convincingly establishes his grooming of each child for his own sexual gratification and delight."

{¶ 37} The trial court also noted that the report lacked "any serious consideration" of the impact of the victims' trial testimony in light of the fact that the jury did not dismiss the children's testimony, and instead, convicted Bell of several sexual crimes. The trial court, after considering the report in full, placed "little weight" on the final conclusion that Bell was a

low-risk offender.[4]  We find no error in this conclusion.

{¶ 38}  While some factors weighed in favor of classifying Bell as a sexually-oriented offender, several of the factors weighed heavily in favor of classifying Bell as a sexual predator.[5]  The facts clearly indicate that Bell abused his position as a foster parent when he was supposed to be taking care and providing a safe and supportive environment for two children who had been removed from their families.  Instead of caring for the children and ensuring their safety, Bell took advantage of his position as the children's care-giver by grooming the vulnerable children and then continually preying upon them in a sexual manner.  Based upon the facts and circumstances present in the case sub judice, the court's finding that Bell was likely to commit sexual offenses in the future and its designation of Bell as a sexual predator was supported by clear and convincing evidence.  Bell's second assignment of error is therefore overruled.

{¶ 39}  Assignment of Error No. 3:

{¶ 40}  THE TRIAL COURT ERRED IN IMPOSING SPECIFIC REGISTRATION REQUIREMENTS THAT POST-DATE THE DATE OF HIS OFFENSE.

{¶ 41}  Bell argues in his final assignment of error that the trial court erred in imposing registration requirements that were not imposed at the time of his offenses.

{¶ 42}  Once the trial court classified Bell as a sexual predator, it informed Bell of his registration requirements.  Over Bell's objection, the trial court included current registration

---

4. We would also note that the report was not entirely favorable to Bell.  Within the report, the writer referenced a possible third victim and that Bell attempted to contact one of his victims through MySpace and email after the children were removed from his home.

5. Bell relies on several cases wherein the courts reversed a sexual predator designation for lack of clear and convincing evidence.  However, each instance of determining one's sexual offender designation is fact-specific and will be based entirely upon the factual scenario and information contained in the record.  As such, Bell's attempt to rank his crimes as "far less egregious" than those given in past case law is fruitless.  So is Bell's argument that the trial court made its determination by relying solely upon the facts of the initial prosecution where the trial court focused more on Bell's pattern of abuse, acting with cruelty toward the victims, and utilizing a position of trust in his abuse.  These important facts speak not only to Bell's underlying crimes, but also to the likelihood of his repeating sexually-oriented offenses in the future.

requirements that were not included as registration requirements within Megan's Law. Bell thus argues that requiring him to register this additional information is an impermissible retroactive application of current registration requirements.

{¶ 43} At the time of Bell's crimes, Megan's Law expressly required sexual offenders to register his or her residential, school, or employment addresses, and that sexual predators also register his or her license plate numbers. Former R.C. 2950.03(A) and (B)(1); R.C. 2950.04; R.C. 2950.05; and R.C. 2950.04(C)(3)(b). Since then, however, R.C. 2950.05 now requires a sexual offender to also register his or her email address, internet identifiers, and telephone numbers.

{¶ 44} The state acknowledges that at the time of Megan's Law, the registration requirements were more limited. However, the state argues that Megan's Law *also* provided that the sexual offender register "any other information required by the Bureau of Criminal Identification and Investigation." Even so, at the time of Megan's Law, sexually-oriented offenders were not required by BCI or statute to register their email addresses, telephone numbers, and internet identifiers. As such, an order requiring Bell to adhere to the current requirements would be an improper retroactive application, and thus invalid.

{¶ 45} As noted by other courts, one of the reasons the Ohio Supreme Court determined that SB 10 was punitive in nature was the more severe registration requirements than those included in Megan's Law. *See State v. Ritchey*, 3d Dist. Allen No. 1-15-80, 2016-Ohio-2878, ¶ 22 (noting that SB 10's registration requirements became more "demanding"). Once SB 10 was recognized as a punitive statute and unconstitutional if applied retroactively, the Ohio Supreme Court specifically determined that "only persons who commit their underlying offense on or after the *effective date* of the Adam Walsh Act can be constitutionally subjected to its requirements." (Emphasis sic.) *In re Von*, 146 Ohio St.3d 448, 2016-Ohio-3020, ¶ 17.

{¶ 46} As such, the trial court erred in requiring Bell to comply with the current registration requirements because Bell's crimes were committed while Megan's Law was still effective. Bell's third assignment of error is, therefore, sustained. This case is remanded to the trial court to correct Bell's registration requirements and limit such to those in effect under Megan's Law.

{¶ 47} Judgment affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

M. POWELL, P.J., and HENDRICKSON, J., concur.