[Cite as *State v. Nash*, 2020-Ohio-388.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

    Plaintiff-Appellee,                          :

                                   No. 19AP-171

v.                                                      :       (C.P.C. No. 08CR-5537)

Stephen E. Nash,                                       :       (REGULAR CALENDAR)

    Defendant-Appellant.                         :

---

D E C I S I O N

Rendered on February 6, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Mark J. Miller*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Stephen E. Nash, appeals a decision and judgment entered by the Franklin County Court of Common Pleas on March 18, 2019 vacating his tier III Adam Walsh Act[1] sex offender classification and instead finding that he is a habitual sex offender under Megan's Law, as it existed prior to the enactment of the Adam Walsh Act. Because we find no basis for concluding that the trial court acted beyond the scope of its jurisdiction in vacating the improper Adam Walsh Act classification and substituting a registration under Megan's Law, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 28, 2008, a Franklin County Grand Jury indicted Nash for numerous sex offenses allegedly perpetrated against his 2 minor biological daughters. (July 28, 2008 Indictment.) Nash initially pled "not guilty" to all counts. (Aug. 1, 2008 Plea Form.)

---

[1] Sometimes recognized by the acronym, "AWA."

However, approximately one year later, Nash pled guilty to five third-degree felonies–two counts of gross sexual imposition, two counts of sexual battery, and one count of pandering obscenity involving a minor. (Sept. 29, 2009 Plea & Sentencing Tr. at 2-21, filed May 2, 2019; Sept. 30, 2009 Plea Form.) The trial court proceeded immediately to sentencing and imposed a jointly recommended sentence of 10 years in prison with credit for 438 days of jail-time credit already having been served. (Plea & Sentencing Tr. at 3, 23-24; Sept. 30, 2009 Jgmt. Entry at 2-3.) The sentence included a notice that Nash would be subject to a five-year period of post-release control. (Sept. 30, 2009 Notice.) The sentence also included a notification that Nash was a tier III sexual offender pursuant to Ohio's enactment of the Adam Walsh Act. (Sept. 30, 2009 Jgmt. Entry at 2; Plea & Sentencing Tr. at 10-11, 24.) Nash did not appeal.

{¶ 3} On May 18, 2018, shortly before Nash's release from prison, the trial court scheduled a reclassification hearing in his case.[2] (May 18, 2018 Hearing Schedule.) The record does not disclose exactly what triggered the trial court's decision to schedule a hearing. The hearing was rescheduled several times for reasons that are also not disclosed by the record. (June 19, 2018 Continuance; July 24, 2018 Continuance; Sept. 26, 2018 Continuance; Nov. 15, 2018 Continuance.) Some months after when Nash would have been (and presumably was) released from prison, but before the hearing had occurred, Nash filed a motion to dismiss the impending reclassification hearing on the grounds that the trial court allegedly lacked jurisdiction to proceed with the hearing since Nash had been released from prison. (Jan 13, 2019 Mot. to Dismiss.) The State responded in opposition. (Jan. 31, 2019 Memo. in Opp.) The trial court continued the hearing one more time (again for reasons that do not appear in the record). (Feb. 5, 2019 Continuance.) Then, on March 6, 2019, the trial court held the hearing.

{¶ 4} During the hearing, both parties argued the jurisdictional issue. (Mar. 6, 2019 Hearing Tr. at 2-5, filed May 1, 2019.) After hearing arguments on the matter, the trial court ruled that it had jurisdiction to reclassify Nash, notwithstanding the fact that he had been released from prison. *Id.* at 5-6. The parties then stipulated that Nash should be

---

[2] The initial scheduling entry does not disclose the nature of the hearing but later-filed records make clear that the hearing was for the purpose of reclassifying Nash under Megan's Law, rather than the Adam Walsh Act, under which he had been initially improperly classified.

classified as a "habitual sex offender under the Megan's Law standards that were previously in effect at the time of [the] offenses." *Id.* at 6-8.

{¶ 5} On March 18, the trial court memorialized the results of the hearing in a decision and entry in which it vacated the tier III classification initially imposed upon Nash under Ohio's enactment of the Adam Walsh Act. (Mar. 18, 2019 Decision & Entry at 1.) The same decision and entry simultaneously found Nash to be a "habitual sex offender" under Megan's Law as formerly in force in Ohio at the time Nash committed the offenses. *Id.* at 1-2.

{¶ 6} Nash now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Nash presents two assignments of error for review:

> [1.]     THE   TRIAL   COURT   ERRED   IN   DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION.
>
> [2.]   THE TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS AND DOUBLE JEOPARDY RIGHTS UNDER THE U.S. AND OHIO CONSTITUTIONS.

## III.  DISCUSSION

### A.  Sex Offender Registration in Ohio

{¶ 8} In 1996, after enactments in other states and federal legislation, the general assembly enacted Ohio's version of what is commonly known as "Megan's Law," creating a comprehensive registration and classification system for sex offenders. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 3-7. The Supreme Court of Ohio found the Megan's Law requirements to be remedial, rather than substantive or punitive, with the result that they could be (and were) imposed retroactively. *State v. Cook*, 83 Ohio St.3d 404, 410-23 (1998); *see also State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 29-40.

{¶ 9} The following decade, in 2007, again after federal legislation, Ohio enacted its version of what is commonly known as the "Adam Walsh Act," redefining the classification system into three tiers and imposing tier classification based solely on the nature of the offense(s) rather than independent factfinding regarding such matters as likelihood of recidivism and criminal and social history. *Bodyke* at ¶ 17-23; 2007

Am.Sub.S.B. No. 10.[3] The Adam Walsh Act provisions, however, were found to be punitive and, accordingly, could not be retroactively applied to persons who committed relevant offenses prior to the effective date of the act. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 22; *see also In re Von*, 146 Ohio St.3d 448, 2016-Ohio-3020, ¶ 21. The upshot of this was, as the Supreme Court succinctly stated:

> Therefore, Ohio has, in effect, separate statutory schemes governing sex offenders depending on when they committed their underlying offense. Those who committed their offense before the effective date of the AWA are subject to the provisions of Megan's Law; those who committed their offense after the effective date of the AWA are subject to the AWA.

*State v. Howard*, 134 Ohio St.3d 467, 2012-Ohio-5738, ¶ 17.

{¶ 10} It is undisputed that Nash committed the offenses to which he pled guilty before the effective date of the Adam Walsh Act and, therefore, should have been subject to the provisions of Megan's Law. It is equally undisputed that Nash was incorrectly classified and notified of a duty to register under the Adam Walsh Act at the time of his original sentencing in 2009. The question in this case is: now that Nash has been released from prison, what can be done about that problem? The State requests that we permit the stipulated reclassification decision to stand. (State's Brief at 29.) Nash argues that his classification under the Adam Walsh Act is void but that the court has no jurisdiction to impose a new classification under Megan's Law. (Nash's Brief at 3-7.) In consequence, Nash's stance appears to be either that no classification should apply to him or that an interpretation of his erroneous classification allegedly made by the Ohio Attorney General's Office should control. (Nash's Brief at 2, 6-7, 9.)

## B. First Assignment of Error – Whether the Trial Court had Jurisdiction to Reclassify Nash Despite the Fact that he had Been Released from Prison

{¶ 11} In general, the remedy for circumstances in which an offender is mistakenly classified according to the Adam Walsh Act is to vacate the classification and schedule a hearing so that the offender can be properly classified under Megan's Law. *State v. D.S.*, 10th Dist. No. 15AP-790, 2016-Ohio-2856, ¶ 18-19. Nash argues that the general remedy should not have applied to him because he had completed his prison term and, according to Nash, the trial court had lost jurisdiction over him to hold such a hearing. (Nash's Brief

---

[3] Archived online at 2007 Ohio SB 10.

at 3-7.)   Other districts have rejected the jurisdictional argument Nash raises.  *State v. Sturgill*, 4th Dist. No. 16CA21, 2017-Ohio-2736, ¶ 7-22; *State v. Bell*, 12th Dist. No. CA2015-10-077, 2016-Ohio-7363, ¶ 9-21; *State v. Miller*, 8th Dist. No. 100768, 2014-Ohio-4568, ¶ 7-10.  Nash nonetheless presents several arguments to justify his argument for lack of jurisdiction.

{¶ 12}  First, Nash argues that Megan's Law classification hearings were required to be held before his prison release date.  (Nash's Brief at 3-4.)  Nash cites *State v. Brewer*, 86 Ohio St.3d 160 (1999), for the proposition that if an offender has not been adjudicated a sexual predator before the time of his release, the offender never can be.  (Nash's Brief at 3-4.)  But in *Brewer*, the question was not whether the trial court had jurisdiction to impose a classification and registration duties after the offender's release from prison.  *Brewer* even remarked that the trial court "may <u>not</u> lose jurisdiction to hold a hearing," simply as a consequence of the offender's having been released.  (Emphasis added.) *Brewer* at 164; *see also State v. Bellman*, 86 Ohio St.3d 208, 209 (1999) (holding that the statutory timing requirements of the sexual predator hearings are not jurisdictional and may be waived).  Rather, in *Brewer*, the crux of the problem was that, having never been classified prior to release, it could not be said that the offenders had "been 'adjudicated as being a sexual predator' according to the statute."  *Brewer* at 164-65.  While Nash was not "adjudicated" under Megan's Law before his release from prison—he was classified and subjected to registration duties (albeit erroneously) under the Adam Walsh Act.  Unlike what occurred in *Brewer*, the State was not seeking to classify Nash or impose onerous registration duties for the first time; rather, the State has only sought to modify the existing classification and registration duties to correct a mistake of law.

{¶ 13}  Second, Nash analogizes his situation to the circumstance where a court has failed to impose post-release control or notify the offender.  In such cases, once the prisoner is released, post-release control cannot thereafter be imposed.  (Nash's Brief at 6, citing *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250; *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126).  However, we have distinguished *Hernandez* and progeny on the grounds that, in *Hernandez*, post-release control was not imposed at all in the judgment entry and no notification was given to the defendant.  *State v. Harper*, 10th Dist. No. 17AP-762, 2018-Ohio-2529, ¶ 16.  In cases where post-release control was mentioned and

imposed, albeit defectively, we have held that the trial court retains jurisdiction to correct the error even after the offender has been released from prison. *Id.* at ¶ 16-19. Applying Nash's analogy, we note that the trial court did not completely omit to impose a classification on Nash or fail to inform him that he would have to register, it simply erred in doing so because it imposed Nash's classification under the wrong law. We do not, therefore, find that the *Hernandez* line of cases suggest that Nash should be beyond the reach of the courts now to correct the error.

{¶ 14} Nash finally argues that, even if the trial court had jurisdiction, the reclassification remedy was unnecessary because he had already been reclassified by the Attorney General's Office. (Nash's Brief at 7.) The record does not shed light on exactly what is meant by Nash's assertion that the Attorney General's Office had reclassified him already. At the trial level, Nash asserted that, "prior to his release last year, he was reclassified by the Attorney General's office as a Tier I offender." (Jan. 13, 2019 Mot. to Dismiss at 6.) The State countered with its own assertion that the Attorney General's Office did not reclassify Nash as "Tier I" but instead listed him as a "(Pre AWA) Sexually Oriented Offender" on its web registry for sex offenders. (Jan. 31, 2019 Memo. in Opp. at 14.) But no actual records regarding this supposed reclassification or website listing were submitted by either party. In any event, the Supreme Court has held:

> 2. R.C. 2950.031 and 2950.032, which require the attorney general to reclassify sex offenders who have already been classified by court order under former law, impermissibly instruct the executive branch to review past decisions of the judicial branch and thereby violate the separation-of-powers doctrine.
>
> 3. R.C. 2950.031 and 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violate the separation-of-powers doctrine by requiring the opening of final judgments.

*Bodyke* at paragraphs two and three of the syllabus; *see also Bundy v. State*, 143 Ohio St.3d 237, 2015-Ohio-2138, ¶ 5, 8. For these reasons, we cannot find merit in Nash's unsupported contentions regarding the Attorney General's Office's purported reclassification or in the Attorney General's legal and state constitutional authority to correct a sentence and classification of a trial court.

{¶ 15}  We overrule Nash's first assignment of error.

**C. Second Assignment of Error – Whether Holding a Reclassification Hearing Violated Double Jeopardy**

{¶ 16}  Nash argues that, having already been classified under the Adam Walsh Act and "reclassified" by the Attorney General's Office, he cannot be reclassified again without violating the Double Jeopardy Clauses of the U.S. and Ohio Constitutions.  (Nash's Brief at 7-8.)  *See also* Fifth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10.  The Adam Walsh Act provisions are punitive, whereas Megan's Law is a civil registration classification.  As such, we see where reclassification under the Adam Walsh Act may support an argument for double jeopardy, post-release from prison, when revisiting and increasing Adam Walsh Act classification or registration requirements.  *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 20-27.  However, this is not the case for Nash.  Here, the trial court changed Nash's sex offender status to vacate the punitive classification improperly imposed under the Adam Walsh Act and replaced it with the non-punitive civil registration requirement imposed under Megan's Law; that does not trigger double jeopardy analysis.  *See Cook*, 83 Ohio St.3d at 410-23; *Ferguson*, 2008-Ohio-4824, at ¶ 29-40.  In short, imposing the correct Megan's Law civil registration requirements to remedy an incorrect and punitive Adam Walsh Act classification is not a second punishment that would violate double jeopardy.  *State v. Williams*, 88 Ohio St.3d 513, 527-28 (2000).

{¶ 17}  We overrule Nash's second assignment of error.

**IV.  CONCLUSION**

{¶ 18}  Notwithstanding the fact that Nash has been released from prison, the trial court had jurisdiction to vacate the improper punitive Adam Walsh Act classification, hold a hearing, and replace it with an appropriate civil registration requirement under Megan's Law.  Because the Megan's Law requirements were civil, imposing them after vacating the Adam Walsh Act classification did not violate double jeopardy.  Having overruled Nash's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.

_____